Fraser *v.* Child.

Judgment affirmed.

---

## ALEXANDER FRASER *v.* WILLIAM T. CHILD.

Where A., having purchased an interest in real estate sold under executions against a third party, and being unable to make payment at the required time, obtained the money from B., and assigned to him the sheriff's certificate of sale; *held,* that a parol agreement—that the purchase should be a joint affair, and that (the property being found encumbered by a prior judgment, a dower interest and a mortgage) B. should take proceedings to make title, by obtaining an assignment of the mortgage, and reselling under foreclosure, A. promising to pay half of any deficiency or loss which might finally result —was a valid contract, not within the statute of frauds, and that A's. undertaking was supported by sufficient consideration.

A party cannot recover money due by the terms of a parol contract for an interest in lands, on the ground of a part performance thereof by him.

THIS was an action for the recovery of money, and was founded upon a parol agreement entered into for the pur-

poses and under the circumstances detailed in the opinion of DALY, J. The case came before this court upon the appeal of the plaintiff, who was defeated in the Marine Court.

*E. Delafield Smith,* for the plaintiff, made and argued the following points :

I. The agreement in question, although by parol, is not within the statute of frauds. (2 R. S. part 2, chap. 7, title 1, §§ 6 and 8, marginal p. 135.) It was not an agreement to create or assign an estate or interest in lands. The assignment by the defendant to the plaintiff of the sheriff's certificate of the sale of Howland's interest in the premises, appears to have been made as a matter of convenience, and in order that the plaintiff might ultimately be in a position, should there be a surplus after the resale under foreclosure; to directly receive a return of the capital advanced by him for the joint benefit of both parties, in their joint operation. That assignment was in writing. If it was a part of the agreement that the certificate should be assigned, such part was performed. The statute was intended to affect such contracts only as are exclusively executory. (*Malins* v. *Brown,* 4 Comst. 411.) It simply provides, that no interest in lands shall pass otherwise than by deed or writing. The statute does not apply to an agreement merely relating to land ; only to contracts to convey. (*Hess* v. *Fox,* 10 Wend. 440 ; *Benedict* v. *Beebe,* 11 Johns. 145, and cases there cited.) And by interest in lands, the statute does not mean every absolute and literal interest. (*Malins* v. *Brown, supra,* and cases there cited ; *Runyan* v. *Mesereau,* 11 Johns. 593 ; *Gillett* v. *Campbell,* 1 Denio, 520.) But if the agreement between the parties may have been void originally, the case falls within the reasons which lead courts of equity to compel the performance of contracts where there has been a part performance. Every thing, from the first advance of $1,400 to the last item required of the plaintiff in his contract, has been faithfully executed by him. A party who has permitted another to perform acts on the faith of an agreement, should not be

allowed to insist that the contract is invalid, because not in writing. How can fraud be alleged by a party where another has faithfully performed his part of the agreement? The plaintiff has risked his money, must inevitably sustain a loss, has given his time and labor, and cannot be restored to the condition in which the defendant found him when a negotiation was first undertaken. Especially should effect be given to the plaintiff's performance in determining this appeal " according to the justice of the case," (Code, § 366,) where the defendant appears, if not to have designed a fraud, yet to have drawn him into a transaction which, unless the defendant is compelled to perform his part of the agreement, will act upon the plaintiff to a still more serious extent, " as a fraud, hardship or deceit." "The statute was made to prevent, not to assist, fraud." (*Malins* v. *Brown*, *supra*; *Abbott* v. *Draper*, 4 Denio, 51 ; *Lowry* v. *Tew*, 3 Barb. Ch. R. 413 ; *Hess* v. *Fox*, *supra*; 2 Story Eq. Jur. §§ 760, 761 ; Roberts on Frauds, marg. pp. 131 to 133, 140 ; *Teal* v. *Anty*, 2 Bro. & Bing. 99, 6 Eng. Com. Law Rep. 54; *Poulter* v. *Kellenbeck*, 1 Bosanquet & Pull. 397 ; *Rickard* v. *Stanton*, 16 Wend. 27.)

II. The objection that the undertaking of the plaintiff upon which the action is founded is not supported by a legal and sufficient consideration, is not tenable. It is not true that the original advance of $1,400 was an isolated transaction, and that the plaintiff received his *quid pro quo* in the assignment to him of the sheriff's certificate. The advance was made days before the assignment was executed. It was agreed that the purchase from the sheriff should take effect as a joint transaction. The assignment was made for convenience, and to enable the plaintiff to receive a direct return of his advance ; but all things were to be done and held for the joint benefit and at the joint risk. The certificate was held in the plaintiff's name, in trust, for both parties. If the defendant's interest ceased upon the assignment of the sheriff's certificate, why did he direct, take counsel and concern himself further in the matter? The plaintiff, on his part, undertook to advance the original $1,400—to advance, also, the money to

obtain possession of the mortgage—to proceed with and attend to its foreclosure, the resale of the property, and the required proceedings to obtain the surplus, if any—and share with the defendant any ultimate profit which might be realized. The defendant, on his part, was to admit the plaintiff to an equal interest in his adventure, and to bear half of any loss which might be sustained. He, accordingly, did admit the plaintiff, upon the latter advancing the $1,400, and assuming the obligations above mentioned. The consideration moving the plaintiff to his agreement was, the expectation of benefit in one of two ways: first, by obtaining an equal interest in the property, and in the rents and profits thereof, provided the same could be bid in, at the foreclosure sale, for about the amount of the mortgage, and a title be acquired by the plaintiff and defendant, or by one for the benefit of both; or, secondly, by securing a sale for sufficient to pay all incumbrances, and leave a surplus to divide between the parties. On the other hand, the defendant, in consideration of parting with half of his interest in the property, and in the prospective gains and advantages, was relieved by the plaintiff from his obligation to raise the $1,400, and contracted to have half of any losses shared by another, at the same time relieving himself from the trouble of conducting the business to an issue, but securing its faithful execution.

III. The advance of the $1,400, by the plaintiff to the defendant, may be regarded as a loan to him for a certain purpose, which he (the plaintiff) is entitled to sue for and recover back, subject to such conditions as he may have voluntarily assented to in making such loan. The parties agreed that if, in the contemplated transaction, the whole of the plaintiff's said loan was not returned to him, then the defendant should repay half of such part thereof as the plaintiff might not receive in the said transaction. The consideration moving the plaintiff to consent to a contingent sacrifice of a part of his advance, was the prospect presented to him of recovering, not only the whole, but a profit and advantage beside. The defendant obtained and accepted the loan to enable him

Fraser *v.* Child.

to meet a liability, and to proceed in a speculative operation, from which he hoped to profit. And he agreed to repay such loan by letting the plaintiff into the said operation on terms, and pledging the first profits of such operation to the payment of the loan, at the same time guaranteeing the plaintiff against the loss of more than one half of the deficiency which might result to him, provided the profits of the operation should prove insufficient to repay the loan. This view of the case is equally justified by the evidence, and establishes the plaintiff's right to recover.

IV. The judgment should be reversed, and judgment entered for the plaintiff.

*John Cook* and *George W. Cook*, for the defendant, submitted the following with other arguments:

I. The complaint is, 1. For money had and received; 2. For money advanced by the plaintiff to the defendant for the purchase of the right, title and interest of one Howland in two lots of land, &c. ; 3. For half of the loss sustained by the plaintiff—and which the defendant agreed to pay—in advancing as above alleged, and for half of the loss and deficiency arising out of the said purchase and out of the resale of the said premises, which the defendant agreed to repay to the plaintiff in consideration of the said advance. The defendant pleaded the general issue. The plaintiff called but a single witness, who proved a private conversation to vary the express terms and effect of the assignment of the sheriff's certificate of sale, which assignment was drawn by the witness as an attorney at law, after hearing the conversation referred to. The assignment is, on its face, an absolute assignment of Child's interest as purchased at the sheriff's sale. It conveys such interest to Fraser for his sole use and benefit, for the consideration therein expressed, without any condition whatever. It stands, upon its face, an absolute sale for Fraser's benefit, free from any liability to an accounting over or relation back to Child. It is a plain bargain and sale of Child's interest in the two lots of land acquired under the

sheriff's certificate. If this instrument, the assignment, can be changed from an absolute bargain and sale to a security for a mortgage loan, by evidence of conversations resulting in a parol understanding, then any deed or written instrument can be varied in the same manner. If the alleged understanding between the parties is correctly set forth by the witness, it took place before the assignment was executed. Why, then, was not the assignment drawn in accordance with the alleged arrangement between the plaintiff and the defendant? The statute of frauds was designed to prevent all such difficulties and uncertainties. Fraser examined the property and ascertained the incumbrances existing upon it before he accepted the purchase from Child. He believed it a good and safe purchase, and, as such, entered into it. He selected his own attorney, the attorney, also, of the holder of the mortgage, and proceeded as an absolute and sole purchaser. There is no direct evidence that Child was ever applied to as to the foreclosure suit prosecuted by Fraser, nor as to the resale, nor the reference relating to the surplus, until after it was discovered that there was a deficiency, and then the attorney applied to Child to pay one half of such deficiency, and presented for his signature a written agreement to that effect, which he very properly refused to execute. If Fraser had realized a profit of $1,000, Child could not have claimed any part of it. If this testimony is to be received, every vendor, after executing an absolute conveyance, can be sued for a loss, where any occurs upon a resale, by similar evidence of a verbal understanding changing the effect of the deed from a conveyance to a mortgage security, and the vendor could likewise sue his vendee for any surplus arising upon a resale. There would be no end to litigation.

II. There was no consideration to support the alleged promise by Child. The real object of the resale was to clear the property of the widow's dower. Fraser promised Child that he would bid in the property at the sale, hold it for five years, and convey it to Child at any time within five years, on receiving all it might cost him and interest.

III. Ackerman testifies that Fraser examined the property, and it is shown, from his negotiation with the witness, relative to letting and other circumstances, that he was willing to purchase upon the same terms as those upon which Child purchased from the sheriff. This is independent testimony, showing that the plaintiff intended to effect a purchase, not to make a loan.

IV. As before stated, the assignment was absolute and without any reservation. If Child had any remaining interest coming to him from Fraser, it would have been an interest in the surplus after Fraser was satisfied. Child, then, in accordance with the statute of frauds, should have had such reserved interest passed or secured to him by an instrument in writing, to qualify the assignment which conveyed his entire interest in the land to Fraser. Otherwise Fraser could not be compelled to answer over for any surplus, had any been realized. Testimony of a parol agreement cannot change an absolute assignment into a mortgage. The sheriff's sale to Child, and Child's sale to Fraser, each created and conveyed an absolute interest in lands. The assignment to Fraser fixed such interest in him. The plaintiff's case attempts, in part, to reconvey such interest to Child by parol. This the statute of frauds forbids. The contract on which the suit is founded involves an agreement by Fraser to reconvey to Child an interest in this land. The alleged agreement was merely verbal and was void. Fraser became the absolute and sole owner of such interest, and neither party can be bound by any parol understanding, conversation or agreement.

V. The judgment should be affirmed.

DALY, J.—It appeared by the testimony of the witness, Clift, that Child, the defendant, had purchased, for $1,400, at a sheriff's sale, under an execution against one Howland, Howland's interest in certain lands, subject to a mortgage in favor of one Allen for $2,250; and being unable to make payment within the time required, Fraser, the plaintiff, advanced the money for him, and Child assigned to Fraser the

sheriff's certificate.  After the purchase, Child ascertained that there was a right of dower in Howland's widow, and two judgments, which were prior incumbrances on the land.  And with a view of getting a clear title to the property, it was agreed between him and Fraser, that an assignment of Allen's mortgage, which was past due, should be obtained, Fraser advancing the money for it; that the mortgage should be foreclosed, and the property purchased at the mortgage sale, if possible, at the amount of the mortgage ; that the purchase should be a joint affair, and that if any deficiency or loss should arise upon the sale under the mortgage, Child would make up one half the deficiency, or bear one half the loss. Child negotiated with Allen, and with his lawyer, Clift, for the assignment of the mortgage.  It was assigned to Fraser, he paying Allen the fu    mount of it, with the interest, and a claim for insurance, ɩ    unting, in all, to $2,375 05.  The mortgage was foreclosed, and, contrary to expectation, the land sold for $4,750—a sum exceeding the amount of the mortgage, and more than sufficient to pay off the existing incumbrances, but not sufficient to reimburse Fraser for the amount he had advanced.  The surplus arising, after the payment of the mortgage, was paid to the city chamberlain, and a reference ordered, to ascertain the rights of the different claimants to it.  The widow's dower interest was computed according to the usual mode, and found to be $514 22 ; after the payment of which, and of the two judgments, together with the expenses of the reference, there was found to be a deficiency of $483 37 between the amount remaining and the whole amount advanced by Fraser, to recover the one half of which deficiency, $241 68, the action below was brought.

Upon the facts thus established, by the testimony of Clift, the plaintiff was entitled to recover.  Clift derived the knowledge of what he swore to from the statement made to him by both parties, pending the negotiation for the assignment of the mortgage, and while he was employed in foreclosing

Nothing was shown, on the part of the defendant, but a

statement of the witness, Ackerman, that he once told Fraser that if he could get a good title to the property he would give him ten per cent. on $4,500 or $5,000 for it, and that he replied that he would take it—a declaration not necessarily conflicting with what was established by Clift's testimony.

This was not a contract creating, assigning, granting or surrendering any interest in lands, which would be void by the statute, as not being in writing, nor was the plaintiff seeking to enforce an executory contract. He advanced money upon the defendant's assurance that if any loss was sustained thereby, the defendant would bear one half of it. A loss was sustained, and the defendant is liable to make good one half of it.

INGRAHAM, FIRST J.—If the contract in this case was originally a contract in relation to land, and, by being in parol, void by the statute, part performance would not relieve the difficulty. The contract would still be void. In *Abbott* v. *Draper*, 4 Denio, 53, Judge Bronson says: "Part performance does not take the case out of the statute, so that the contract can be enforced in a court of law." In that case it was held that a purchaser in possession under a parol contract could not recover back the money he had paid on account, until he returned the possession, and demanded the repayment of the money. And even if he did so, it was then doubted whether he could recover back the money he had paid, if the vendor was willing to perform.

The reason given is not that partial performance made the contract valid, but that he had paid the money with a full knowledge of all the facts; and if the vendor does not refuse to comply, money so paid cannot be recovered back. (See, also, 5 Cow. 162; 14 Johns. R. 358.)

But I do not understand this contract to be for an interest in lands within the statute. Stripped of all the surrounding circumstances, it was simply an agreement with the plaintiff, that if he would advance for the defendant $1,400, he would give him an assignment of the sheriff's certificate, and after the

plaintiff had done certain things then agreed upon between them, relating to the mortgage and other proceedings, that he should sell the property, and if he was not repaid the amount advanced, defendant would pay half.

· If A., the owner of a lot of ground, procured from B. one thousand dollars, and conveyed to him a lot of land on the parol understanding, that if B. sold it, and it did not bring $1,000, he would pay the deficiency, there would be no doubt that B. could recover such deficiency, and that the statute of frauds would not apply. The present case is similar in principle.

I think the plaintiff was entitled to judgment for the amount of his claim and interest.

WOODRUFF, J., concurred.

Judgment reversed